UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

RICHARD T. COLE,

    Plaintiff in 2:15cv419,
    Defendant in 2:15cv479,

v.

WADID DAOUD,                CIVIL ACTION NOS. 2:15cv419
                                    & 2:15cv479

and

DAOUD INVESTMENT HOLDINGS, INC.,

    Defendants in 2:15cv419,
    Plaintiffs in 2:15cv479,

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This business dispute is before the court for a second review under Rule 12(b)(6).[1] Richard Cole ("Cole"), following dismissal of his original Complaint and Counterclaim, filed an Amended Complaint and Amended Counterclaim against his former business partner and investor, Wadid Daoud ("Daoud") and Daoud Investment Holdings, Inc., ("DIH"). Daoud and DIH move to strike some of the facts supporting Cole's allegations and move dismiss most of the claims in their entirety. The pending motions were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C),

---

[1] The first motion to dismiss, as well as the complicated factual and procedural history, is reviewed in detail in the court's earlier rulings. No. 2:15cv419 (ECF Nos. 34, 40); No. 2:15cv479 (ECF Nos. 34, 36).

Rule 72 of the Federal Rules of Civil Procedure, and the Local Rules of this court. For the reasons outlined below, the undersigned RECOMMENDS that in case number 2:15cv419, the court DENY Daoud and DIH's Motion to Strike (ECF No. 44), and GRANT IN PART and DENY IN PART Daoud and DIH's Motion to Dismiss the Amended Complaint (ECF No. 46). In case number 2:15cv479, the undersigned RECOMMENDS that the court GRANT Daoud and DIH's Motion to Dismiss the Amended Counterclaim (ECF No. 38).

## I.    PROCEDURAL HISTORY

Cole originally filed suit in this court on September 21, 2015, against Daoud, DIH, and Kent George ("George"), and the case was docketed as case number 2:15cv419 ("419").[2]  Compl., No. 2:15cv419 (ECF No. 1). Following extensive briefing and oral argument, the court dismissed George and several counts alleged against Daoud and DIH. The court also granted Cole ten days to file an Amended Complaint in the 419 case and an Amended Counterclaim in case number 2:15cv479 ("479").

Cole timely filed his Amended Complaint and Amended Counterclaim, omitting George as a Defendant and asserting entirely new claims against Daoud and DIH. Am. Compl., No. 2:15cv419 (ECF No. 41); Am. Countercl., No. 2:15cv479 (ECF No. 37). Daoud and DIH again move to dismiss Cole's Amended

---

[2] Kent George was previously a Defendant in the 419 case, but was dismissed from the case, and Cole did not name him as a Defendant in his Amended Complaint.

Complaint and Amended Counterclaim for failure to state a claim, No. 2:15cv419 (ECF No. 46); No. 2:15cv479 (ECF No. 38), and they also move to strike portions of the Amended Complaint, No. 2:15cv419 (ECF No. 44). On May 20, 2016, the court consolidated the two cases pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, No. 2:15cv419 (ECF No. 55); No. 2:15cv479 (ECF No. 44), and referred the matter to the undersigned for a report and recommendation, No. 2:15cv419 (ECF No. 56).

## II. STATEMENT OF FACTS

In 2013, Cole and two other individuals[3] formed Waypoint Partners, LLC ("Waypoint"), a Virginia limited liability company.[4]  Compl. ¶¶ 1, 7, No. 2:15cv419 (ECF No. 41, at 1-2). Waypoint's primary asset was a 51 percent ownership interest in Viridia, LLC ("Viridia"), a Virginia limited liability company formed concurrently with Waypoint, and Waypoint was "designated as the Manager of Viridia." Id. ¶¶ 1, 8. Viridia was "formed to develop and sell certain products to the public through a multi-level or network marketing structure." Id. ¶ 8 (ECF No. 41, at 2). Cole was chief executive officer ("CEO") of Viridia,

---

[3] One of these individuals, Kent George, is discussed by name in Cole's Amended Complaint and Amended Counterclaim.  However, George is no longer a party in either the case.

[4] Consistent with the appropriate standard of review, the recited facts are drawn from the 419 Amended Complaint and the 479 Amended Counterclaim, and taken as true for purposes of these motions.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

and worked with George to establish a business plan and budget. Id. ¶¶ 10-11. Viridia's business plan involved developing a "new proprietary line of cosmetics in order to be able to market and sell a unique product with a sufficient profit margin to support the multi-level marketing commission structure." Id. ¶ 11. The business plan called for capital requirements of $2,800,000.00, and "contemplated that Viridia would outsource all development, product design, formulation, production, marketing and sales management." Id. ¶ 12 (ECF No. 41, at 3). The primary vendor for the outsourced work was to be Innovasource, "a company in which - as was known to George - Cole had an indirect financial and management interest." Id. Cole alleges that Viridia had "completed the development and production of a line of proprietary cosmetic products, had established an initial sales force, and launched the product." Id. ¶ 14. To cover Viridia's operating expenses, Cole contributed personal funds, and he performed work for Viridia without pay. Id. ¶¶ 15-16.

On April 4, 2014, Cole and Daoud, an investor in Viridia, discussed Viridia's financial problems, and Daoud later "formed DIH for the sole purpose of providing funding for Viridia." Id. ¶¶ 19-20. Daoud told Cole and others that he would "provide sufficient funding for Viridia to become profitable," and the parties estimated that the funding needed was between

4

$1,500,000.00 and $2,000,000.00.  Id. ¶ 20.  As part of this investment, Daoud assured Cole that he had the funds to support Viridia and that he would pay Cole's salary, as currently owed, and in the future, if he continued to work for the company.  Id. ¶¶ 21-22 (ECF No. 41, at 4).  After Cole told George about Daoud's interest in investing in Viridia, George and Daoud negotiated the terms of Daoud's investment.  Id. ¶¶ 23-24.

On May 29, 2014, Daoud and George reached an agreement in which Daoud would assume control of Waypoint and become manager of Viridia.  Id. ¶ 25.  Both George and Daoud represented to Cole that Daoud would commit to fund at least $1,425,000.00, and "if after that funding was completed the prospect of Viridia was good, Daoud would continue additional funding as reasonably necessary."  Id.  When making the determination as to Viridia's viability, the parties - Cole, George, and Daoud - agreed to look at Viridia's performance at the end of 2014.  Id.  Cole alleges that "[a]s a condition precedent to Daoud's obligation to fund, ... Daoud and George told Cole that he had to transfer his 25% membership interest in Waypoint to DIH."  Id. ¶ 26.  He also alleges that Daoud and George conspired to defraud him and agreed privately that Daoud would not have any obligation to provide additional funding to Viridia.  Id. ¶ 27.  George then prepared a series of related written agreements, which the parties agreed would constitute "a single transaction" to

implement their prior negotiations. Id. ¶ 28. The single transaction consisted of the following agreements: Investment Agreement; Warrant; First Amended and Restated Operating Agreement of Waypoint Partners, LLC; First Amended and Restated Operating Agreement of Viridia, LLC; and Assignments of Waypoint Membership Interests. Id.

On July 24, 2015, the parties closed the transaction and circulated electronic signature pages, which purported to include all of the necessary signatures. Id. ¶ 31 (ECF No. 41, at 5). After the transaction closed, Cole assigned his "25 Class B shares in Waypoint" to DIH, and the shares had an agreed value of $726,750.00. Id. ¶ 32. As part of the transaction, and as set forth in the Investment Agreement, DIH would invest $1,425,000.00 in Viridia. Id. ¶ 33. The agreements also included forum selection clauses that established "exclusive jurisdiction in the state and/or federal courts in the Commonwealth of Virginia." Id. ¶ 34. On July 25, 2015, Daoud represented to Cole and others that the transaction was closed. Id. ¶¶ 35-37. Although all parties acted as though the transaction was closed, Cole alleges that Daoud and George "had no intention of effecting the Transaction, ... had no intention of creating an enforceable obligation to provide funding[,] [and] conspired to take Cole's interest in Waypoint, while

6

inducing him to work for free and advancing funds to Viridia."
Id. ¶ 38 (ECF No. 41, at 6).

Daoud also asked Cole to prepare a private placement
memorandum for DIH in order to raise equity capital, and DIH was
then supposed to use the capital raised to fund Viridia.   Id. ¶
39.   Because of Cole's work drafting the private placement
memorandum for DIH, and in consideration of Cole's assignment of
his Waypoint interest, Cole alleges that Daoud agreed to grant
Cole an ownership interest in DIH.   Id. ¶ 40.   This agreement
was confirmed in writing.   Id.   By unanimous consent of the
Board of Directors of DIH, Cole was then appointed vice
president of DIH.   Id. ¶ 41.   As set forth in the private
placement memorandum, Daoud, as president of DIH, accepted
subscriptions on behalf of DIH.   Id. ¶ 45.   When the funds were
deposited in DIH's account, Daoud would transfer the funds to
Viridia as a loan.   Id. ¶ 46.

Cole alleges that "[i]n September, Daoud instructed [him]
that upon receipt of a future investment, Daoud wanted the
proceeds used to repay him for the payment of Viridia's
attorneys' fees in connection with the Transaction."[5]   Id. ¶ 47.
In November 2014, Deborah Cox Wood ("Wood") offered to purchase
shares in DIH, and when Cole told Daoud about Wood's offer,

---

[5]  Cole's Amended Complaint does not state in which year Daoud
instructed him to repay Daoud for payment of Viridia's attorneys'
fees.

Daoud voiced no objection.  Id. ¶¶ 49-50 (ECF No. 41, at 6-7).
On March 4, 2015, Cole e-mailed Daoud to explain the particulars
of Wood's subscription.  Id. ¶ 52 (ECF No. 41, at 7).  Cole
attached a signature page to the e-mail for Daoud to execute,
"just as Daoud had done for the numerous other subscriptions
that Cole had solicited."  Id.  During late February and early
March 2015, Daoud was out of the country and not in
communication with Cole.  Id. ¶ 51.  On March 10, 2015, Daoud
responded to Cole's March 4, 2015, e-mail, and he also copied
Wood on the e-mail.  Id. ¶ 53.  Cole alleges that the e-mail
contained "several disparaging and defamatory statements
pertaining to [him]."  Id. ¶ 55.  In this e-mail, Daoud stated
that "he owns '100% of Daoud Investment Holdings, Inc.' and that
Cole was 'not authorized to take any action with respect to the
shares of Daoud Investment Holdings, Inc.'"  Id. ¶ 56.  Daoud
also stated that "Cole 'had no right to sell a subscription or
receive any money on behalf of Daoud Investment Holdings, Inc.'"
Id. ¶ 57.

Daoud then removed Cole as CEO of Viridia, and at the time
of his removal, Cole alleges he was owed $400,000.00 in past
wages and loans to the company.  Id. ¶ 61.  Shortly thereafter,
Viridia filed for bankruptcy.  According to the Amended
Complaint, this was "due to the failure of DIH to provide
funding to Viridia, as agreed by the parties."  Id. ¶ 61 & n.1.

Cole's Amended Complaint alleges four claims against Daoud and DIH arising from a dispute over the related agreements, as well as the actions of Daoud before and after the transaction: (I) defamation; (II) breach of contract and/or unjust enrichment; (III) declaratory judgment for indemnity; and (IV) declaratory judgment regarding the transaction and related agreements.

Because Daoud and DIH did not move to dismiss Count I of the original Complaint, Count I of the Amended Complaint is identical to Count I of the original Complaint.  In Count I, Cole alleges that Daoud defamed him, and that DIH is liable for the acts of its agent, Daoud, who made the statements within the scope of his duties for DIH.[6]  Id. ¶¶ 76-86 (ECF No. 41, at 9).

Count II alleges that Daoud and DIH breached their agency agreement with Cole by failing to reimburse Cole for the costs and expenses he advanced, as well as the liabilities he incurred, while acting in his capacity as vice president of DIH. Id. ¶¶ 88-91 (ECF No. 41, at 10).  Cole states that "DIH's refusal to reimburse Cole constitutes a breach of the Bylaws of DIH," and Daoud's and DIH's "refusal to reimburse Cole constitutes a breach of their agency agreement and/or results in unjust enrichment to Defendants."  Id. ¶¶ 92-93.  He asserts

---

[6] Again, neither Daoud, nor DIH, has moved to dismiss the defamation count in Cole's Amended Complaint.

that he is entitled to reimbursement from Daoud and DIH for all costs and expenses that he incurred while acting as an agent for DIH in his capacity as vice president. Id. ¶ 94.

In Count III, Cole seeks a declaratory judgment for indemnity, asserting that "[a] declaration of the respective rights of the parties is necessary to prevent the risk of undirected action jeopardizing the parties' respective interests, rights, and obligations." Id. ¶ 114 (ECF No. 41, at 12). Specifically, Cole alleges that "[p]ursuant to the PPM [private placement memorandum], Daoud personally signed and accepted numerous subscriptions on behalf of DIH, as its President," and in one specific instance, "Cole, as Vice President and/or agent for Defendants, informed Daoud of a potential $250,000 investment from Ms. Wood in exchange for shares in DIH." Id. ¶¶ 97, 100 (ECF No. 41, at 10-11). Cole states that "Defendants have ... claimed that DIH is entitled to 'repayment' from Cole in the amount of the investments solicited on behalf of DIH." Id. ¶ 109 (ECF No. 41, at 11). Cole claims that his "rights are affected by Defendants' assertion that he is liable to repay investment funds that DIH received from investors for shares of DIH," and his "rights may be affected to the extent that investors seek repayment from Cole for investment funds paid to or for the benefit of DIH while Cole

served in the capacity as Vice President and/or agent for Defendants." Id. ¶¶ 112-13 (ECF No. 41, at 11-12).

In Count IV, Cole seeks a declaratory judgment regarding the transaction and related agreements. He asserts that the transaction included several related agreements, and that the parties executed the agreements and proceeded as if the transaction was closed. Id. ¶¶ 116-19 (ECF No. 41, at 12). One of the agreements, the Investment Agreement, "included the adoption of an Amended and Restated Operating Agreement for Viridia, LLC," and stated that "each party will take such action as any other Party reasonably may request to carry out the purposes of the Investment Agreement ... and that each party is entitled to specific performance of the Investment Agreement." Id. ¶¶ 120-21. Cole alleges that Daoud now asserts that "Viridia's members never adopted the Amended and Restated Operating Agreement," and notes that Daoud filed a sworn affidavit in the 479 case stating that he did not intentionally sign the Investment Agreement. Id. ¶¶ 122-24 (ECF No. 41, at 12-13). Because of this ambiguity regarding the related agreements, Cole states that "[a] declaration of the respective rights of the parties is necessary to prevent the risk of undirected action jeopardizing the parties' respective interests, rights, and obligations." Id. ¶ 130 (ECF No. 41, at 13). That is, Cole asserts that "[t]he Defendants should be

estopped from taking inconsistent positions and retaining the benefits of the Transaction and Related Agreements while avoiding the responsibilities." Id. ¶ 126. Cole summarizes the parties' rights and obligations as follows:

> If the Court concludes that Defendants did not execute the Investment Agreement, then it must follow, and the Court should enter an order finding, that the Assignment is null and void. In that case, Cole may have rights as a member of Waypoint. It may also follow that Defendants are liable for certain actions taken on behalf of Waypoint without authority.
>
> Alternatively, if the Court concludes that the Investment Agreement is enforceable against Defendants, then Cole (and other parties) may have the right to demand specific performance of certain terms contained in the Investment Agreement, including, but not limited to Daoud's full execution of the Amended and Restated Operating Agreement of Viridia and the Warrant pertaining to DIH's investment in Viridia.

Id. ¶¶ 127-28.

In the 479 case, Cole has not moved to dismiss any of the claims against him, but Daoud and DIH move to dismiss Cole's Amended Counterclaim. Because Cole's Amended Counterclaim contains the same claims as the 419 Amended Complaint, this report will only briefly discuss Daoud and DIH's 479 Complaint and Cole's Amended Counterclaim.

Daoud and DIH allege that Cole did not have authority to raise money for Viridia by selling shares of stock in DIH. Compl. ¶ 8, No. 2:15cv479 (ECF No. 1-1, at 6). Specifically, they allege that despite Cole's lack of authority, he

12

"impermissibly solicited $250,000 of funds from an investor in exchange for shares of stock in DIH." Id. ¶ 9. From this $250,000.00 investment, Cole advised Daoud that with expenses, the investment only netted $176,000.00 – with $91,000.00 to be paid to Cole, $45,000.00 to be paid to Viridia as a loan, and $40,000.00 to be paid to Daoud. Id. ¶ 10. Daoud states that he did not accept the $40,000.00, and he "notified the third party investor ... that Cole was never authorized to issue any shares, and that Cole should return the money immediately." Id. ¶ 11.

Cole continued to attempt to sell shares in DIH, and Daoud and DIH allege that Cole's conduct constitutes fraud. Specifically, in Count I, Daoud and DIH allege that Cole committed fraud by "siphon[ing] money from Viridia for his personal use," and "falsely represent[ing] to Daoud that the signature pages presented to him were for Viridia transactions when in fact they were DIH subscription agreements." Id. ¶¶ 20-21 (ECF No. 1-1, at 8). Relying on Cole's misrepresentations, Daoud signed one of the subscription pages, which resulted in damages for him and his company, DIH. Id. ¶¶ 22-23. As to Count II, the equitable subrogation claim, Daoud and DIH assert that as a result of Cole's conduct, they are "repaying or are in the process of repaying certain investors who were misled by Cole," and these investments total no more than $57,000.00. Id. ¶ 27. (ECF No. 1-1, at 9).

Cole's Amended Counterclaim in the 479 case is identical to his Amended Complaint in the 419 case. His Amended Counterclaim asserts the following claims against Daoud and DIH: (I) defamation; (II) breach of contract and/or unjust enrichment; (III) declaratory judgment for indemnity; and (IV) declaratory judgment regarding the transaction and related agreements. (ECF No. 37). In Cole's response to Daoud and DIH's motion to dismiss the Amended Counterclaim, Cole states that "the Counterclaim served to put the Florida Court on notice that Cole had a virtually identical case pending against the Plaintiffs in this Court," and because "[t]his Court has not consolidated this case with the 419 Case, and unless and until that happens, Cole is within his right to assert his claims and defenses in both cases." (ECF No. 42, at 2).

## III. ANALYSIS

### A. Daoud and DIH's Motion to Strike

Daoud and DIH move to strike paragraphs 8-18, 20-25, 27, 29, 30, 34, and 38 from Cole's Amended Complaint.[7] No. 2:15cv419 (ECF No. 44). They argue that "the Amended Complaint continues to contain allegations that were based on counts that were

---

[7] Daoud and DIH's brief accompanying their motion to strike asks the court to strike paragraphs 8-18, 20-25, 27, 29, 30, 34, and 38. However, in another portion of their brief they ask the court to strike paragraphs 8-18, 20-24, 27, 29, 30, 34, and 38. This report assumes Daoud and DIH seek to dismiss paragraphs 8-18, 20-25, 27, 29, 30, 34, and 38 because their brief includes argument and analysis related to these paragraphs.

struck and are no longer relevant to any claim in the current action."  Defs.' Br., No. 2:15cv419 (ECF No. 45, at 1). Specifically, they argue that the paragraphs all relate to either "Cole's dealings with Viridia, LLC," "Daoud's alleged agreement to invest in Viridia," or "the alleged commitment to fund Viridia and Daoud's alleged breach of that commitment," all of which are "completely irrelevant to the claims remaining in this suit," and "[t]he prior Report and Recommendations ... found that [these] allegations were untrue."  Id. at 2-3.

Daoud and DIH also argue that "by leaving in these paragraphs, [they] ... will have to contend with discovery on issues raised by those paragraphs even though those paragraphs are immaterial to the claims that survive."  Defs.' Reply Br. (ECF No. 53, at 2).  In response, Cole argues that the "Defendants fail to demonstrate how the disputed paragraphs are scandalous or prejudicial," and "[e]ven if relevancy w[as] [a] proper ground[] for a motion to strike, the paragraphs attacked by Defendants are relevant to the Amended Complaint in that they provide factual background and context."  Pl.'s Resp. Br. (ECF No. 51, at 3) (emphasis in original).

Under Rule 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Although a motion to strike may be sought by either party, "Rule 12(f)

motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380, 647 (2d ed. 1990)). A motion to strike will be "granted only for egregious violations," and the "allegations [in the motion] must be the type envisioned by the rule and prejudicial." Russell v. Nationwide Ins. Co., 2008 WL 4922356, at *5 (E.D. Va. Nov. 17, 2008) (quoting Brown v. Inst. for Family Centered Servs., 394 F. Supp. 2d 724, 727 (M.D.N.C. 2005)). Moreover, "relevance is not a basis to strike paragraphs from a complaint." Id. Instead, Rule 12(f) contemplates striking material that is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f).

In the present case, Daoud and DIH fail to show that the challenged paragraphs meet the standard set forth in Rule 12(f). That is, the facts presented in these paragraphs are not scandalous, redundant, immaterial, prejudicial, or advanced for an improper purpose. Although Daoud and DIH contest the allegations set forth in Cole's Amended Complaint, the challenged paragraphs do not contain facts that are inherently scandalous or necessarily false. Instead, these paragraphs are material to Cole's allegations. Specifically, the claims

16

presented in Cole's Amended Complaint involve disputed communication among the parties and disagreement about the resulting relationships between the parties. Moreover, the court's prior resolution of the original motion to dismiss did not resolve any factual disputes, though it did rely on documents attached to the pleadings. Because the facts presented in the challenged paragraphs inform the court's analysis as to the parties' relationships and the underlying allegations, and Daoud and DIH fail to show these paragraphs are improper under Rule 12(f), the undersigned recommends that the court deny Daoud and DIH's Motion to Strike (ECF No. 44).

**B.  Daoud and DIH's Motion to Dismiss Cole's Amended Complaint in the 419 Case**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a Complaint. "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A pleading fails to meet this standard and is subject to dismissal under Rule 12(b)(6) when it does not "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content "that allows the court to draw

17

the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Factual allegations must be enough to raise a right to relief above the speculative level" and beyond the level that is merely conceivable. Twombly, 550 U.S. at 555. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not state a claim. Iqbal, 556 U.S. at 678.

The United States Supreme Court has described the motion to dismiss analysis in two parts. First, the court must accept the allegations of fact as true. Id. However, a court is not required "to accept as true a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), or a legal conclusion unsupported by factual allegations, Iqbal, 556 U.S. at 678-79. After reviewing the allegations, the court must then consider whether they are sufficient to state a plausible claim for relief. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A Rule 12(b)(6) motion should be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling

him to relief." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

In addition to considering the facts alleged in the Complaint, the court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." Silverman v. Town of Blackstone, Va., 843 F. Supp. 2d 628, 631 (E.D. Va. 2012). "The Court may also look to documents attached to the complaint and those incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment." Id.; see also Pueschel v. United States, 369 F.3d 345 (4th Cir. 2004). This includes documents attached to the Motion to Dismiss when the document "was integral to and explicitly relied on in the complaint and the plaintiff[] do[es] not challenge its authenticity." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (quoting Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999)).

1. Count II: Breach of Contract and/or Unjust Enrichment

In Count II, Cole asserts a claim for breach of contract, or in the alternative, he asserts a claim for unjust enrichment against the Defendants. See Fed. R. Civ. P. 8(d); Va. Code Ann. § 8.01-281(A) ("A party asserting either a claim, [or] counterclaim, ... may plead alternative facts and theories of recovery against alternative parties, provided that such claims

... for relief so joined arise out of the same transaction or occurrence."). Daoud moves to dismiss Count II in its entirety, and DIH moves to dismiss the unjust enrichment portion of the claim, but concedes that Cole states a claim for relief as to DIH's alleged breach of contract. Defs.' Br. (ECF No. 47, at 2-4).

In Virginia, the elements of a breach of contract claim are: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Filak v. George, 594 S.E.2d 610, 614 (Va. 2004).

With regard to the breach of contract claim, Daoud argues that Cole has only alleged a contract between himself and DIH, and as a result, his Amended Complaint and Amended Counterclaim fail to allege any legally enforceable obligation between Cole and Daoud personally. But, as Cole points out, his pleadings allege at least two separate sources of the duty between him and the Daoud parties. See Am. Compl. ¶¶ 87-94, No. 2:15cv419 (ECF No. 41, at 10). In addition, Cole specifically pled that Daoud appointed him vice president of DIH, and provided him with an ownership interest. Id. ¶¶ 39-40 (ECF No. 41, at 6). Later, Cole claims that Daoud tasked him with preparing a private placement memorandum to solicit investments in DIH. Id. ¶ 39.

And Daoud told Cole to transfer funds from a specific investment solicited by Cole, as reimbursement for expenses already provided to Viridia. Id. ¶ 47. These facts, and reasonable inferences from them, render a breach of contract claim against Daoud plausible.

As demonstrated by the allegations in Daoud's Complaint against Cole in the 479 case, there are stark differences in the parties' description of Cole's authority to act on behalf of DIH. Daoud alleges that Cole had no authority and committed fraud by soliciting investments without authority. Compl. ¶¶ 8-18, No. 2:15cv479 (ECF No. 1-1, at 6-7). However, both agree that Cole was soliciting investments for DIH, an entity Daoud formed "for the sole purpose of raising funds for Viridia." Id. ¶ 19 (ECF No. 1-1, at 8). Under these circumstances, viewing the alternatively pled facts in the light most favorable to Cole, the facts suggest that Cole was engaged to prepare private placement documents and solicit stock subscriptions for a Daoud-owned entity. He has also pled that he was denied the benefits of his agreement when he was summarily discharged from Viridia and did receive the payments and reimbursements allegedly promised. Accordingly, he has stated a plausible claim for breach of contract against both Daoud and DIH.

Virginia law also "recognize[s] the quasi-contract action to recover unjust enrichment." Nossen v. Hoy, 750 F. Supp. 740,

744-45 (E.D. Va. 1990) (citing <u>Kern v. Freed Co.</u>, 299 S.E.2d 363, 365 (Va. 1983)). "The quasi-contract is a plaintiff's remedy at law when the facts establish that a defendant has been unjustly enriched at the expense of the plaintiff, but where the facts fail to establish that the parties established any form of agreement." <u>Id.</u> at 744. To establish a quasi-contract, a plaintiff must plead and prove the following elements:

> (1) A benefit conferred on the defendant by the plaintiff; (2) Knowledge on the part of the defendant of the conferring of the benefit; and (3) Acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value.

<u>Id.</u> at 744-45 (citing <u>Corbin on Contracts</u> § 19, at 50 (Supp. 1989)). "[T]he modern trend is to recognize actions for quasi-contract based on a 'reasonable expectation theory.'" <u>Id.</u> at 745. Under this theory, a plaintiff must establish that one of the following three factors is true: "(1) The plaintiff had a reasonable expectation of payment; (2) The defendant should reasonably have expected to pay; or (3) Society's reasonable expectations of security of person and property would be defeated by nonpayment." <u>Id.</u> (citing <u>Provident Life & Accident. Ins. Co. v. Waller</u>, 906 F.2d 985, 993 (4th Cir. 1990)). However, Virginia law does not provide relief under the theory of unjust enrichment when "a valid, express contract exists between the parties." <u>Centrex Constr. v. Acstar Ins. Co.</u>, 448

F. Supp. 2d 697, 707 (E.D. Va. 2006) (citing <u>Raymond, Colesar,</u> <u>Glaspy & Huss, P.C. v. Allied Capital Corp.</u>, 961 F.2d 489, 491 (4th Cir. 1992)).

Both Daoud and DIH move to dismiss the unjust enrichment claims. Both claim that Cole's pleading fails to specifically allege that they knew of the benefits Cole claims to have conferred on them, or that they retained these benefits without paying for them. Their brief argues that Cole primarily alleges conferring the benefit on Viridia, a nonparty, and not on Daoud and DIH directly.

After reviewing the pleadings, this report concludes that Cole has alleged the elements of unjust enrichment. Specifically, in paragraphs 87-94 of Cole's Amended Complaint, he alleges that he incurred expenses, costs, and liabilities for DIH and as an agent for both Daoud and DIH. Am. Compl. ¶¶ 88-89, No. 2:15cv419 (ECF No. 41, at 10). He alleges both Defendants received a benefit from Cole's efforts on their behalf. <u>Id.</u> ¶ 90. And he asserts that they have retained these benefits because neither has reimbursed Cole for the cost and expenses he advanced or the liabilities he incurred acting on their behalf. <u>Id.</u> ¶¶ 45, 91 (ECF No. 41, at 6, 10).

Of course, merely alleging the elements in a "formulaic recitation" is insufficient to survive a motion under Rule 12(b)(6). <u>Francis v. Giacomelli</u>, 588 F.3d 186, 193 (4th Cir.

2009) (quoting <u>Twombly</u>, 550 U.S. at 555).  Here, however, Cole's allegations are supported by factual claims sufficient to render his unjust enrichment count plausible on its face.  <u>Iqbal</u>, 556 U.S. at 678.

Specifically, Cole alleges that Daoud and DIH benefited from his efforts to prepare a private placement memorandum and solicit investments in DIH.  Am. Compl. ¶¶ 39-40, No. 2:15cv419 (ECF No. 41, at 6).  He also alleges DIH received an executed assignment of all of Cole's interest in Waypoint with an agreed value of $726,750.00.  <u>Id.</u> ¶ 32 (ECF No. 41, at 5).  He claims both Daoud and DIH received proceeds from investments Cole solicited on their behalf.  <u>Id.</u> ¶¶ 45-46 (ECF No. 41, at 6). Finally, Cole alleges that Daoud specifically controlled all of the funds in DIH accounts, and that investments solicited by Cole on their behalf were deposited in these accounts. <u>Id.</u> ¶ 46.

A valid written contract regarding these matters would preclude any claim for unjust enrichment.  <u>See</u> <u>Mongold v. Woods</u>, 677 S.E.2d 288, 292 (Va. 2009).  But both the existence and terms of any express contract in this case are still in dispute. As a result, Cole may alternatively plead his claim for unjust enrichment, and the facts he alleged plausibly support both alternative theories.  <u>Lion Assocs., LLC v. Swiftships Shipbuilders, LLC</u>, 475 Fed. Appx. 496, 503 (4th Cir. 2012) ("If an express contract exists but does not cover the services

rendered, a cause of action for unjust enrichment remains available."); Kancor Americas, Inc. v. ATC Ingredients, Inc., No. 1:15cv589, 2016 WL 740061, at *7-8 (E.D. Va. Feb. 25, 2016).

> 2. **Cole's Claims Regarding Declaratory Judgments Against Daoud and DIH**

In Counts III and IV, Cole seeks declaratory judgments, styling his third count as "Declaratory Judgment for Indemnity" and his fourth count as "Declaratory Judgment Regarding the Transaction and Related Agreements." Am. Compl., No. 2:15cv419 (ECF No. 41). He states that "declaration[s] [regarding] ... the respective rights of the parties [are] necessary to prevent the risk of undirected action jeopardizing the parties' respective interests, rights, and obligations." Id. ¶¶ 114, 130 (ECF No. 41, at 12-13). As to Count III, Defendants Daoud and DIH argue that "there is no actual controversy at this present time because persons referenced in Cole's Amended Complaint have not yet made any claims, demands or threatened claims against Cole." Defs.' Br. (ECF No. 47, at 4-8). With regard to Count IV, Defendants argue that Cole improperly asks the court to determine whether the parties executed the related agreements, which would be a determination about the parties' past conduct. Id.

When determining whether declaratory relief is appropriate, federal courts exercising diversity jurisdiction apply federal

law. <u>White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.</u>, 913 F.2d 165, 167 (4th Cir. 1990). Under 28 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). For a court to have jurisdiction to issue a declaratory judgment, "the dispute must be a 'case or controversy' within the confines of Article III of the United States Constitution," and "the trial court, in its discretion, must be satisfied that declaratory relief is appropriate." <u>White</u>, 913 F.2d at 167.

First, "[t]he test for a 'case or controversy' ... is whether the dispute 'is definite and concrete, touching the legal relations of parties having adverse legal interests.'" <u>Id.</u> (quoting <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 240-41 (1937)). In the context of a declaratory judgment, "[t]he question is [therefore] 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" <u>Id.</u> at 167-68 (quoting <u>Maryland Cas. Co. v. Pac. Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941)). Second, the

following factors are relevant to determine whether a district court should grant declaratory relief:

> (1) whether the judgment "will serve a useful purpose in clarifying the legal relations in issue;" (2) whether the judgment "will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding;" (3) considerations of federalism, efficiency, and comity; (4) "whether the declaratory judgment action is being used as a device for procedural fencing – that is, to provide another forum for res judicata or to achieve a federal hearing in a case otherwise not removable."

Norfolk Dredging Co. v. Phelps, 433 F. Supp. 2d 718, 721 (E.D. Va. 2006) (quoting Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 422 (4th Cir. 1998)); see also 28 U.S.C. § 2201(a).

### a. Count III: Declaratory Judgment for Indemnity

In Count III, Cole asks the court to declare that he is not liable to Defendants "in any amount for actions taken in his capacity as Vice President and/or agent for Defendants," and if any investor makes a claim against him "pertaining to the investments he solicited on behalf of DIH in his capacity as Vice President and/or agent for Defendants, Cole is entitled to indemnification by Defendants." Am. Compl. ¶¶ 110-11, No. 2:15cv419 (ECF No. 41, at 11). As discussed above, declaratory relief is only appropriate when there is a justiciable controversy, and when the court determines that such relief is appropriate.

In the present case, Cole's claim for declaratory relief in Count III does not present a "case or controversy."  Cole asks for declaratory relief "to the extent that any of the investors make claims against Cole."  Am. Compl. ¶¶ 110-11 (ECF No. 41, at 11).  That is, Cole is asking the court to issue a declaratory judgment for potential future claims against him.  However, "a declaratory judgment may not be given for a purely hypothetical situation."  Marina One, Inc. v. Jones, 22 F. Supp. 3d 604, 609 (E.D. Va. 2014) (quoting A.S. Abell Co. v. Chell, 412 F.2d 712, 719 (4th Cir. 1969)).  Other than describing the parties' dispute about the Wood subscription, Cole does not identify what past actions may render him liable to Defendants, he does not identify any claims adversely asserted, and he does not dispute Defendants' assertion that no investors have asserted claims against him.  Although a Plaintiff does not need to wait to suffer an injury before seeking declaratory relief, a Plaintiff must still plead sufficient facts to support his claim for this relief.  Marina One, Inc., 22 F. Supp. 3d at 609.  Those facts are necessary to permit the court to determine whether declaratory relief is appropriate for the particular claim asserted.  Without evidence that Cole will actually face claims of liability from DIH investors, it is impossible for the court to conclude whether he should bear such liability himself or whether the circumstances require indemnity.  Cole therefore

28

fails to plead facts sufficient to support a claim for a declaratory judgment for indemnity, and the undersigned recommends that the court dismiss Count III of Cole's Amended Complaint.

### b. Count IV: Declaratory Judgment Regarding the Transaction and Related Agreements

In Count IV, Cole seeks a declaratory judgment to determine whether the parties executed the agreements that constitute their business transaction. Cole states that if the court determines "that Defendants did not execute the Investment Agreement," he seeks a declaratory judgment, holding that "the Assignment is null and void." Am. Compl. ¶ 127, No. 2:15cv419 (ECF No. 41, at 13). Alternatively, if the court determines that "the Investment Agreement is enforceable against Defendants," Cole asks for a declaratory judgment, holding that "Cole (and other parties) may have the right to demand specific performance of certain terms contained in the Investment Agreement, including but not limited to Daoud's full execution of the Amended and Restated Operating Agreement of Viridia and the Warrant pertaining to DIH's investment in Viridia." Id. ¶ 128. Daoud and DIH characterize Count IV an attempt by Cole to "seek[] a declaratory judgment concerning whether or not the parties have fully executed certain documents." Defs.' Br. (ECF No. 47, at 7). They argue that this relief would be an

interpretation of the parties' past conduct, and as such, does not satisfy the requirements for a declaratory judgment action. Id.

As discussed above, a declaratory judgment is appropriate when there is a justiciable case or controversy, and the court deems such relief appropriate.  When determining whether such relief is appropriate, courts look to whether the declaratory "will serve a useful purpose in clarifying and settling the legal relations in issue" and "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)).  In contrast, "[a] declaratory judgment is 'unavailable in situations where ... claims and rights asserted have fully matured, and the alleged wrongs have already been suffered.'"  Hanback v. DRHI, Inc., 94 F. Supp. 3d 753, 758 (E.D. Va. 2015) (quoting Trull v. Smolka, No. 3:08cv460, 2008 WL 4279599, at *8 (E.D. Va. Sept. 18, 2008)).  That is, "when damages arising from a business transaction have 'already accrued,' a declaratory judgment is inappropriate" because "'there is no guidance' that can be offered via a declaratory judgment to steer" the parties' future conduct regarding the business transaction.  Id. (quoting The Hipage Co., Inc. v. Access2Go, Inc., 589 F. Supp. 2d 602, 615

(E.D. Va. 2008)); see 28 U.S.C. § 2201(a); Tapia v. U.S. Bank, N.A., 718 F. Supp. 2d 689, 695 (E.D. Va. 2010).

Here, the parties' dispute about the underlying transaction and written agreements is not suitable for resolution by declaratory judgment because the dispute does not present an ongoing controversy. Specifically, Cole asks the court to determine whether the parties executed several written agreements, which he alleges formed a single transaction. This relief would require the court to look at the parties' past conduct because Cole asks the court to issue a declaratory judgment that would address harm he has already suffered. However, a declaratory judgment is inappropriate when, as is the case here, there is "no reasonably certain future conduct to be prevented or mandated," and "any relief owed to Plaintiff[] will be fully adjudicated through the resolution of the other affirmative claims set forth in the amended complaint." Orbit Corp. v. FedEx Ground Package Sys., Inc., 2015 WL 4605767, at *5 (E.D. Va. July 30, 2015); Bagley v. Wells Fargo Bank, N.A., 3:12cv617, 2013 WL 350527, at *7 (E.D. Va. Jan. 29, 2013).

Because any harm Cole allegedly suffered has already occurred, a declaratory judgment regarding the parties' related agreements would require the court to adjudicate the parties' past conduct. As such, any dispute as to the agreements will be resolved by Cole's other pending claims. The undersigned

therefore recommends that the court dismiss Count IV in the Amended Complaint.

**C. Daoud and DIH's Motion to Dismiss Cole's Amended Counterclaim in the 479 Case**

Cole acknowledges that the Amended Complaint and Amended Counterclaim are identical, and states that at the time he filed his response, "[t]his Court ha[d] not consolidated this case with the 419 Case, and unless and until that happens, Cole is within his right to assert his claims and defenses in both cases." No. 2:15cv479 (ECF No. 42, at 2). After Cole filed his brief asserting this argument, the court consolidated the two cases, 419 and 479, under case number 2:15cv419. No. 2:15cv419 (ECF No. 55); No. 2:15cv479 (ECF No. 44). Thus, it is no longer necessary for Cole to maintain his Counterclaim in the 479 case because after consolidation, there is no risk of an inconsistent decision as to the two cases, and any issues raised by the Amended Counterclaim will be addressed by the court in the 419 case. Moreover, the interests of judicial efficiency will be served by streamlining the briefing and analysis of Cole's remaining claims in one pleading. See Fed. R. Civ. P. 1. The parties do not dispute that the Amended Counterclaim in 479 and the Complaint in 419 are identical.[8] See No. 2:15cv479 (ECF Nos.

---

[8] In Daoud and DIH's reply brief in the 479 case, they argue that "[t]o the extent Cole's claims survive 12(b)(6) motions filed in both cases,

32

39, 42, 43). Accordingly, the undersigned recommends that the court grant Daoud and DIH's Motion to Dismiss Cole's Amended Counterclaim in case number 2:15cv479 (ECF No. 38), and dismiss the Amended Counterclaim without prejudice.

## IV.   RECOMMENDATION

For the foregoing reasons, the undersigned recommends that in case number 2:15cv419, the court DENY Defendants' Motion to Strike (ECF No. 44), and GRANT IN PART and DENY IN PART Defendants' Motion to Dismiss (ECF No. 46). Specifically, with regard to Defendants' Motion to Dismiss (ECF No. 46) in case number 2:15cv419, the undersigned recommends that the court deny Defendants' Motion to Dismiss as to Count II, and grant Defendants' Motion to Dismiss as to Counts III and IV. In case number 2:15cv479, the undersigned RECOMMENDS that the court GRANT Defendants' Motion to Dismiss (ECF No. 38), and dismiss the entire Amended Counterclaim without prejudice, as cumulative of the claims already set forth in consolidated case number 2:15cv419.

---

the Court should nonetheless dismiss Cole's Amended Complaint in the 419 case since it is duplicative of the Amended Counterclaim in this earlier-filed case." No. 2:15cv479 (ECF No. 43, at 2). They note that "[i]n applying this rule, there is 'an ample degree of discretion, appropriate for disciplined and experienced judges.'" Id. (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183-84 (1952)). As set forth in greater detail above, due to the cumulative nature of the Amended Complaint and Amended Counterclaim, and in the interests of judicial efficiency, this report recommends that the court dismiss the entire 479 Amended Counterclaim without prejudice.

## V.   REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.   Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.   A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/

Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

July 6, 2016